(24 Misc. Rep. 88.)

### PEOPLE ex rel. FLEMING v. DALTON et al.

(Supreme Court, Special Term, Kings County. June, 1898.)

GREATER NEW YORK CHARTER—REMOVAL OF OFFICERS.

Laws 1898, c. 186, § 3, providing that a person holding a position under the civil service of a city cannot be removed without an opportunity to explain or without the reason therefor being stated in writing and filed with the head of the department, applies to the city of New York, notwithstanding that the charter of Greater New York contains provisions relating to the terms or tenure of all city employés, and also a provision (section 1618) that no part of the charter shall be deemed repealed or amended by any act of the legislature unless it be so expressly stated, or the intent to do so is unmistakable.

Mandamus by the people, on the relation of William R. Fleming, against William Dalton, commissioner of water supply of the city of New York, and James Moffett, deputy commissioner, to restrain defendants from removing relator from a position under the civil service, in New York City. Granted.

Herbert H. Kellogg (Samuel H. Ordway, of counsel), for relator.
William J. Carr, Assist. Corp. Counsel, for defendants.

JOHNSON, J.    Chapter 186 of the Laws of 1898 is in terms an
amendment of the Laws of 1883, which was, and is recognized as, the
statutory origin of what has come to be known as the civil service law
of the state.    Section 3 of the Law of 1898 provides that "if a per-
son holding a position subject to competitive examination in the civil
service of the state or of a city shall be removed or reduced the reason
therefor shall be stated in writing and filed with the head of the de-
partment or other appointing officer, and the person so removed or
reduced shall have an opportunity to make an explanation."    It is
shown that the relator held a position subject to competitive examina-
tion in the civil service of the city of New York, and that the officer
at the head of the department to which he was attached has removed,
or attempted to remove, him without following or complying with the
provisions of the Law of 1898, above quoted.    It is practically con-
ceded that, if the provisions quoted above apply to the city of New
York, the writ here prayed for must issue.

This brings us to the very interesting and important question in-
volved in this application.    The defendant contends that the pro-
visions of the Law of 1898 do not apply to the city of New York, or to
persons holding positions subject to competitive examinations under
the heads of departments of that city, because the so-called charter
of New York is a local or special act, containing provisions in relation
to the terms or tenure of office of all officers or employés of the city;
and that the rule of construction is well settled that a general act will
be construed so as not to affect, add to, or limit a special act on the
same subject.    The rule of construction is as stated by the defendant;
and it is a rule predicated upon the principle that the legislature in
providing for the general, cannot be presumed to have intended to
interfere with the express and peculiar, provisions that it had already
made for local or special cases.

The question is, does that rule of construction apply here?    Care-
fully considering that question, it seems to me very clear, both on prin-
ciple and authority, that the rule of construction presented by the
defendant cannot prevail.    The case of People v. Jaehne, 103 N. Y.
182, 8 N. E. 374, is as near this as any two cases of statutory construc-
tion can well be, and, as it seems to me, is decisive against the con-
struction claimed by the defendant.    In that case it appeared that the
charter of New York had defined the crime of bribery and the punish-
ment therefor when committed in that city.    The provision in that
charter was complete and effective, and unquestionably had defined
the crime and the punishment in that locality.    The Penal Code made
a definition for that crime, new in form, and provided a greater, and,
as was considered, a more adequate, punishment.    The Penal Code
was a general act, and there, as here, was presented the rule against
the repeal or abrogation of a special by a general law; a leading case
cited to sustain that contention being McKenna v. Edmundstone, 91
N. Y. 231, here relied on by defendant.    The court said the rule
claimed did not apply in that case; that it could not have been in-

tended that the Penal Code should be stayed by the bounds of a city. The decision there made has been repeatedly followed or approved. People v. Moran, 123 N. Y. 262, 25 N. E. 412; Anderson v. Anderson, 112 N. Y. 112, 19 N. E. 427; People v. O'Neil, 109 N. Y. 262, 16 N. E. 68; Jaehne v. New York, 128 U. S. 193, 9 Sup. Ct. 70. This case seems to me stronger against the rule claimed by defendant than the Jaehne Case.

But, apart from the authority of the Jaehne Case, I think the construction claimed by the defendant cannot prevail. The provision in question, read literally, applies to employés of the class of the relator in every city of the state. But probably every city, certainly most cities, in the state, are organized under special and local acts, commonly known as "charters." Manifestly, we cannot say that this general provision does not affect any of those special acts, because that would be, not to construe or limit, but to destroy, an express and clear mandate of the legislature. But it may be said that the proper rule of construction will limit the effect of this provision to those cities that have no provision as to tenure of office for positions in the competitive class. Are there any such cities, and would it not be better to say that the rule claimed will leave this provision to apply to each city, so far as its charter fails to make any provision for the tenure of positions in that class? And that rule would make the provision in question applicable to this case. Besides, the civil service law is already in force in every city of the state; and so, in a larger and perhaps more accurate sense, is a part of the charter of every city. It became so by a general law, which, so far as I am able to see, was subject to the objection here made, if this, its latest amendment, is so subject. But that the original law was fully effective in every city has had universal recognition, both with public officers and in the courts.

This provision in the law of 1898 but supplements or completes the great body of statute law included in the original civil service act of 1883, and the acts in terms amendatory of that act. While that body of statute law carefully provided tests for the filling of all positions in the competitive class, it left removals entirely at the will or pleasure of officers that it had said could not appoint. Obviously, this provision, giving a person who, through such tests, has fairly secured such a position, the right before removal to explain or answer written and filed charges, is but a proper supplement, entirely germane to the original act. Hence we have here a provision in terms an amendment, and in scope and effect a necessary, or at least proper, addition to a law already a part of the government of New York City. Recognizing that the original law came into the government of New York and of all cities ex proprio vigore,—that is, without aid from local charters or laws,—it seems to me that it cannot be held that any rule of construction will prohibit the amendment from equally taking effect according to both its letter and its spirit.

I think the better argument from intent is that the legislature must have considered and intended that this amendment would, as a matter of course, following the original act, have scope and effect, according to its letter, in all cities of the state. Hence I conclude

that the provision in question, by natural and ordinary rules of construction, must be held to be effective in New York City.

The remaining question to be here considered arises under section 1618 of the act creating the Greater City of New York. That section provides that neither that act, nor any section or portion of it, shall be deemed to be repealed or amended by any act of the legislature, unless it is so expressly stated or the intent to do so is unmistakable. Acts intended to state or define the intent of subsequent legislatures are certainly not favored, and they have sometimes been altogether rejected by the courts. It certainly seems quite novel to embody in a local law a rule of statutory construction applicable only to it, and only intended to save or shield such local law from the effect of laws passed by a subsequent legislature. Our constitution favors general legislation as to cities, and divides them into classes, both to enforce and to facilitate such legislation,—legislation as to cities by classes. But, if legislation of the character of section 1618 is to have the effect here claimed, would it not result that a law relating to cities of the first class would affect Buffalo alone? The precise scope and effect of a clause of this kind it is certainly not quite easy to state; and difficulties and considerations are abundant against a radical view in either direction. But, apart from that consideration, it seems to me that the legislative intent is unmistakable that the amendment in question should have effect in all cities, and certainly should not fail in the one city that contained nearly half of the population of the state. I can fail to find such an intent only by ignoring both the letter and the history of the law.

In reaching the conclusion here indicated, I can but state that I do not find weight or force in the argument which was presented to me, predicated on what is stated as the situation or political exigency which caused the passage of this act of 1898. I do not think that what has been done for civil service in this state or nation has been done for such transitory or elusive political advantage, and I feel certain that arguments predicated on finding such an intent in the legislative department have not found lodgment or favor with the courts.

My conclusion is that the relator is entitled to the writ of mandamus according to the prayer of his petition. Mandamus granted.